Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff
Daisy Reyna

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAISY REYNA, as an individual and as Guardian Ad Litem for D.S. and Z.S., two minors,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES, DEPARTMENT OF CHILDREN AND FAMILY SERVICES, DCFS SOCIAL WORKER MICHELE LOYA-CHHABRA, DCFS SUPERVISOR KAREN VANCE, and DOES 1-10,<br><br>Defendants. | Case No.  2:19-cv-2629<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER 18 U.S.C. § 1983 AND SUPPLEMENTAL STATE-LAW CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.     The warrantless removal of a child from her parents' custody is a severe action that may only be undertaken if a particular, exigent standard is met: the official must provide reasonable cause to believe that the child is in imminent danger of serious bodily injury, that the scope of the intrusion is reasonably necessary to avert that specific injury, and that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant.

2     This lawsuit pertains to the warrantless removal of two children, D.S. and Z.S., from their mother's custody by individuals employed by the Los Angeles County Department of Children and Family Services (DCFS) on April 7, 2017. One of the DCFS employees who removed D.S. and Z.S., DCFS social worker Michele Loya-

Chhabra, knew the applicable standard to follow when removing a child without a warrant. Indeed, Loya-Chhabra had been sued in the Central District of California for the same exact practice, and Judge John A. Kronstadt had set forth the applicable standard that needed to be followed when conducting a warrantless removal when he denied her motion for summary judgment based on qualified immunity. Nevertheless, DCFS and Loya-Chhabra continued their customary practice of removing children from their homes with no legal exigency and without warrants. Plaintiffs Daisy Reyna, D.S. and Z.S. are victims of this customary practice and DCFS social worker Michele Loya-Chhabra's disregard for the applicable legal standard.

## JURISDICTION AND VENUE

3.      Plaintiffs assert claims under 42 U.S.C. § 1983. Accordingly, subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. Plaintiffs' state-law claims form part of the same case and controversy, and are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367.

4.      Plaintiffs' claims arise out of a course of conduct involving employees of the County of Los Angeles, from the Department of Children and Family Services that took place in the County of Los Angeles, State of California, and within this judicial district. Venue is appropriate in this Court.

## PARTIES

5.      Plaintiff Daisy Reyna is an adult qualified to sue. She appears for herself individually and on behalf of her two daughters, Plaintiff D.S., a minor, and Plaintiff Z.S., a minor, as their guardian ad litem.

6.      Defendant County of Los Angeles (County) is a political subdivision of the State of California. County is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Department of Children and Family Services (DCFS) and its agents and employees. At all relevant times, County was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of its employees and agents complied with

2

1  the laws of the United States and of the State of California. At all relevant times,

2  County was the employer of each of the individually named defendants

3       7.       Defendant Michele Loya-Chhabra is a social worker employed by the

4  DCFS, and seized D.S. and Z.S. without a warrant.

5       8.       Defendant Karen Vance is the DCFS supervisor who approved

6  Defendant Loya-Chhabra's seizure of D.S. and Z.S. without a warrant.

7       9.       Defendant Does 1 to 10 are unnamed because their identities have yet to

8  be ascertained.

9       10.      Each individually named and each doe defendant acted under color of law

10  and within the scope of his or her agency and employment with the County.

11                                        **FACTS**

12       11.      In 2017, Plaintiff Daisy Reyna lived with her husband, Omar Sanchez,

13  two daughters, D.S. and Z.S., and her mother, Moriah Montez (the maternal

14  grandmother of D.S. and Z.S.) in a tidy, suburban single-family home in Lakewood,

15  California.

16       12.      On April 7, 2017, Ms. Reyna's mother-in-law (the paternal grandmother

17  of D.S. and Z.S.) and sister-in-law (the maternal aunt of D.S. and Z.S.) were staying at

18  the family home, visiting for the birthdays of D.S. and Z.S. The two girls' birthdays are

19  six days apart. Ms. Reyna had organized a party for her daughters and the family was

20  looking forward to the celebration, scheduled for the next day, a Saturday. In the early

21  morning of April 7, 2017, law enforcement conducted a raid of the family home in

22  connection with a criminal investigation pertaining to Mr. Sanchez. The two girls, ages

23  four and two at the time, were asleep in the home, as were their paternal grandmother

24  and paternal aunt. Ms. Reyna and her husband were not home. Around the same time

25  as the raid at the home, Mr. Sanchez was arrested away from the home and was taken

26  into custody. Meanwhile, Ms. Reyna was driving home in the morning when she was

27  stopped by law enforcement blocks from the house. A firearm that was registered to

28  her was found in the car and Ms. Reyna was arrested on the spot, handcuffed, and

                                            3

placed in the back of a police vehicle. Instead of being driven to a police station, Ms. Reyna was driven to her home, where she was kept in the backseat of the police vehicle parked nearby. While in the back of the police vehicle Ms. Reyna was interviewed by DCFS Social Worker Michele Loya-Chhabra, who then conducted a cursory investigation inside the home.

13.     During DCFS Social Worker Loya-Chhabra's cursory investigation, she noted the presence of D.S. and Z.S.'s paternal grandmother and paternal aunt, and observed the home to be well organized and furnished, and the two girls deeply sleeping in the den. Nonetheless, DCFS Social Worker Loya-Chhabra, with the approval of her supervisor, supervising DCFS social worker Karen Vance, seized D.S. and Z.S., without a warrant or legally sufficient exigency, away from the custody of Ms. Reyna and transferred them to the "protective custody" of the DCFS. There was ample time to seek a warrant, but no grounds on which to ask for one, and none was sought. Thus, two different DCFS social workers had an opportunity to review a plan for the warrantless removal of D.S. and Z.S., and neither chose to follow the applicable legal standard. Since D.S. and Z.S. were not in imminent threat of bodily harm, DCFS social workers should have sought a warrant, but Loya-Chhabra and supervisor Vance chose to ignore the applicable legal standard, abusing their power in the process.

14.     Just before the cursory investigation, Plaintiff Daisey Reyna told DCFS Social Worker Michele Loya-Chhabra that even if she was being arrested, the girls could stay in the family home with their grandmother and aunt. Plaintiffs contend that Ms. Reyna made legally justifiable complaints to DCFS Social Worker Michele Loya-Chhabra, particularly, to not have her daughters removed from her home and placed in the custody of DCFS, and it was these complaints that prompted retaliation by Loya-Chabbra. In particular, DCFS Social Worker Michele Loya-Chhabra's actions made clear that she had made up her mind and was going to seize D.S. and Z.S. to spite Ms. Reyna's protests, and regardless of the fact that family members were present in the home and that the two girls were not in imminent danger of bodily harm. For instance,

4

during the pendency of the investigation, Ms. Reyna told Loya-Chhabra that her own mother lived with the family and that her mother would be coming home soon. Loya-Chhabra refused to seek a warrant, refused to investigate the prospect of the maternal grandmother taking care of the two girls, and refused to consider the prospect of the paternal grandmother and paternal aunt taking care of the two girls. Mr. Reyna provided the telephone number of her mother, Moriah Montez, and before the children were taken away, a male detective spoke by phone to Ms. Montez. Ms. Montez confirmed to the male detective that she lived at the family home with Ms. Reyna and that she was heading home and would be there shortly. The male detective told Ms. Montez she needed to be home or else DCFS would take the two girls. Ms. Montez hurried home, but when she arrived, just before 9 a.m. on April 7, 2019, DCFS had already taken the two girls into their "protective custody." Ms. Montez even went on to show the male detective her bedroom to prove she lived at the home, but it did not matter, DCFS Social Worker Michele Loya-Chhabra had already made up her mind to conduct a warrantless removal of the two girls, and the girls were not allowed to stay with family members. DCFS supervisor Karen Vance did not adequately supervise the decision to remove D.S. and Z.S. on April 7, 2017, nor make sure the applicable standard was being followed, choosing to rubber-stamp the removal and continue DCFS' customary practice of warrantless removals of children despite no imminent physical threat being present.

15. The warrantless removal of the two girls did not bear initial judicial scrutiny. After the removal of D.S. and Z.S., DCFS Social Worker Michele Loya-Chhabra filed a dependency petition pursuant to Cal. Welf. & Inst. Code § 300 in the Superior Court, which was reviewed, approved, and signed by supervising DCFS Social Worker Karen Vance. Vance did not check the factual inaccuracies alleged by Loya-Chhabra in the initial § 300 petition, and rubber-stamped the petition. The § 300 petition contained numerous falsehoods, including that two loaded handguns had been found unsecured in the home, and that Ms. Reyna was a current user of marijuana

incapable of providing regular care and supervision of the children. At the initial detention hearing on April 12, 2017, five days after the girls had been removed, the Superior Court Commissioner Blackwell released D.S. and Z.S. back to Ms. Reyna's custody on the conditions that Mr. Sanchez not reside in the home, that Ms. Reyna submit to and test clean for drugs, that no firearms be kept in the home or on Ms. Reyna's person, and that the maternal grandmother and aunt reside in the home with Ms. Reyna, D.S. and Z.S. None of those conditions were a problem for Ms. Reyna, and in fact reflected Ms. Reyna's pleadings to Loya-Chhabra on April 7, 2017, as Ms. Reyna desperately offered arrangements that could be made as an alternative to the seizure of D.S. and Z.S. On May 23, 2017, the court dismissed the § 300 petition that had been filed by Loya-Chhabra.

16.     The summary, warrantless removal traumatized D.S. and Z.S., who were terrified to be separated from their family. The girls were kept at a foster home in Victorville, outside of Los Angeles County, and every night they were away, cried through the night for their parents. The removal traumatized Ms. Reyna as well, who had been powerless to stop DCFS from taking away her children, despite her protests and explanations of rational alternatives to their removal. The trauma of the girls' removal was apparent when they were returned to Ms. Reyna's custody following the hearing on April 12, 2017. Both girls were scared and confused, both appeared dehydrated, the lips of Z.S. were cracked, and she had dried snot over her face. Furthermore, both girls were wearing clothes that were too small and didn't fit. On the date of the seizure, DCFS Social Worker Loya-Chhabra had refused to accept clothing of the girls that had been packed by their paternal grandmother. Once back home with their mother, D.S. and Z.S. were not the same happy girls they had been prior to their warrantless removal: they suffered from nightmares, were scared to sleep away from their mother, and would cry when Ms. Reyna left the home to go to the store, despite their grandmother's presence in the home.

17.     DCFS Social Workers Loya-Chhabra and Vance knew their warrantless,

6

summary removal of D.S. and Z.S. was wrongful. In fact, Loya-Chhabra had been sued and denied qualified immunity for similar conduct in the past, resulting in a six-figure County settlement after the denial of her motion for summary judgment almost three years before this incident. On that occasion, United States District Judge John A. Kronstadt ruled:

> "The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Wallis [v. Spencer*, 202 F.3d 1126 (9th Cir. 2000)] at 1136. "Officials may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Id.* at 1138. The official must have "reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant." *Rogers v. County of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007). That time may be as short as a "few hours." *Id.* at 295.

*Ferguson v. Cty. of Los Angeles*, C.D. Cal. Case No. 2:12-CV-06865-JAK (Order filed June 5, 2014) (Docket No. 112).

18.     The warrantless removal of children, in violation of the applicable legal standard, is a customary practice by the DCFS. In fact, DCSFS worker Loya-Chhabra herself has been sued for this very same practice on another occasion, which resulted in another six-figure County settlement. *See Johnson v. Ct. of Los Angeles*, C.D. Case No. 2:17-CV-935-SVW-KS.

19.     Given the standard for the warrantless removal of children from their family home, which these DCFS social workers knew or should have known, especially given the prior litigation, no reasonable public official in the position of these DCFS social workers could have thought grounds existed for the warrantless seizure of D.S. and Z.S. This was particularly true in light of the facts that any supposed threat to the

girls' safety --Ms. Reyna and Mr. Sanchez -- were in custody, and D.S. and Z.S. could have stayed with an array of family members within their home, whether that be their maternal grandmother, their paternal grandmother, or their paternal aunt.

## DAMAGES

20.     As a direct and proximate result of aforesaid acts and omissions, and the customs, practices, policies and decisions of the defendants alleged in this complaint, Plaintiffs suffered and will continue to suffer great emotional, mental and physical pain and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused and will continue to cause Plaintiffs to sustain general damages in a sum to be determined at trial.

21.     Plaintiffs D.S. and Z.S. were taken from their family and placed amongst strangers. The trauma from this experience at four years and two years of age respectively continues to reverberate, as the two now have great fear of strangers and being separated from their family.

22.     As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff Reyna suffered past and future losses of income which have caused her to sustain damages in a sum to be determined at trial.

23.     As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff Reyna incurred legal, medical and other expenses, and will incur future legal, medical and other expenses, which have caused her to sustain damages in a sum to be determined at trial.

24.     The individually named and Doe defendants, excluding Defendants County of Los Angeles and DCFS, acted outside the scope of their jurisdiction and without authorization of law. The aforementioned acts of the individual Defendants,

and each of them, was willful, wanton, malicious and oppressive, with reckless disregard for, in deliberate indifference to, and with the intent to deprive Plaintiffs of their constitutional rights, and did in fact violate the aforementioned rights, entitling Plaintiffs to exemplary and punitive damages in an amount to be proven at the trial against individually named and Doe defendants, excluding Defendants County of Los Angeles, Probation and DCFS, which are immune from punitive damages.

## FIRST CLAIM FOR RELIEF

### Violation of Civil Rights – 42 U.S.C. § 1983

(Individual Liability)

25.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein. Defendants Loya-Chhabra, Vance, and Does, acting under color of state law, violated rights guaranteed by the First, Fourth and Fourteenth Amendments to the Constitution of the United States by each of the following:

(a) Chilling the free speech of, and retaliating against Plaintiff Reyna for exercising her First-Amendment right to complain about perceived misconduct during the DCFS cursory investigation on April 7, 2017;

(b) Detaining Plaintiffs D.S. and Z.S. without probable cause or reasonable suspicion in violation of the Fourth Amendment;

(c) Seizing D.S. and Z.S. without probable cause, reasonable suspicion, warrant or legally sufficient exigency, and separating him from their mother, Plaintiff Reyna, in violation of the Fourth and Fourteenth Amendments; and

(d) Fabricating evidence, filing false reports and declarations in support of a meritless dependency petition in the Superior Court.

26.     As a result, Plaintiffs were injured and damaged as alleged above.

## SECOND CLAIM FOR RELIEF

**Violation of Civil Rights – 42 U.S.C. § 1983**

(Entity Liability)

27.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein. At all times mentioned, Defendants County and DCFS, the Entity Defendants, with subjective and objective deliberate indifference, and in conscious and reckless disregard to the safety, security and constitutional and statutory rights of people within Los Angeles County and otherwise subject to their jurisdiction, instituted and maintained policies and practices, and failed to train or supervise employees as alleged.

28.     The Entity Defendants allow their employees to conspire with each other to remove children from the custody of their parents without a warrant or legally sufficient exigency, and DCFS uses its power to initiate dependency proceedings as a tool with which to punish and to retaliate against people.

29.     The Entity Defendants were deliberately indifferent to the rights of Plaintiffs and others similarly situated in that they were sued in cases such as *Ferguson v. Cty. of Los Angeles*, C.D. Cal. Case No. LA CV12-06865 JAK, based on the remove children from the custody of their parents without a warrant or legally sufficient exigency by social workers such as Loya-Chhabra, and despite adverse rulings leading to substantial settlements, were deliberately indifferent to appropriate supervision and training.

30.     As a result, Plaintiffs were injured and damaged as alleged above.

**THIRD CLAIM FOR RELIEF**

**Violation of Civil Rights – 42 U.S.C. § 1983**

(Supervisory Liability Against Supervising DCFS Social Worker Karen Vance and Does 1-5)

31.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

10

32. Supervising DCFS Social Worker Karen Vance and Does 1-5 acted in a supervisory capacity under color of law.

33. The acts and failures of DCFS Social Worker Karen Vance and Does 1-5 were a cause of the illegal warrantless removal of D.S. and Z.S., which deprived Plaintiffs of their rights under the First, Fourth, and Fourteenth Amendments, as alleged above.

34. DCFS Social Worker Karen Vance and Does 1-5 knew and had been put on notice that her subordinate DCFS Social Worker Michele Loya-Chhabra was engaging in the illegal practice of warrantless removals not in conformance with the applicable legal standard and knew or reasonably should have known that this conduct would deprive Plaintiffs of these rights.

35. DCFS Social Worker Karen Vance and Does 1-5 failed to act to prevent Loya-Chhabra, herr subordinate, from engaging in such conduct.

36. The known or obvious consequence of training deficiencies and the failures to enforce written policies would be to cause subordinates like DCFS Social Worker Michele Loya-Chhabra to violate Plaintiffs' constitutional rights;

37. DCFS Social Worker Karen Vance and Does 1-5 disregarded this consequence.

38. These training deficiencies and the failures to enforce written policies resulted in the deprivation of Plaintiffs' rights by Loya-Chhabra, but also Vance herself, as she signed the § 300 petition and had approved the warrantless removal.

39. DCFS Social Worker Karen Vance and Does 1-5 engaged in conduct that showed a reckless or callous indifference to the deprivation by their subordinates of the rights of others.

40. The conduct of DCFS Social Worker Karen Vance and Does 1-5 was willful, wanton, malicious, or done with reckless disregard for the rights and safety of Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to each of those defendants.

1

2                                   **PRAYER FOR RELIEF**

3 WHEREFORE, Plaintiffs prays for relief as follows against defendants:

4           1.       General and compensatory damages in an amount according to proof;

5           2.       Special damages in an amount according to proof;

6           3.       Exemplary and punitive damages against each individual and Doe

7                     defendant, but not against the County or DCFS, in amounts according to

8                     proof;

9           4.       Cost of suit, including attorney's fees, under 42 U.S.C. § 1988; and

10           5.       Such other relief as may be warranted or as is just and proper.

11

12                                 **LAW OFFICES OF ERIN DARLING**

13 DATED:  April 5, 2019

14

15                          By:     */s/ Erin Darling*

16                                Erin Darling
                               Attorney for Plaintiffs

17

18

19

20                                 **JURY DEMAND**

21        Plaintiffs hereby demand a trial by jury on all issues so triable.

22                                 **LAW OFFICES OF ERIN DARLING**

23 DATED:  April 5, 2019

24                          By:     */s/ Erin Darling*

25                                Erin Darling
                               Attorney for Plaintiff

26

27

28